IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LAKI KAAHUMANU and MAUI WEDDING AND EVENT PROFESSIONALS ASSOCIATION,<br><br>            Plaintiffs,<br><br>    v.<br><br>STATE OF HAWAII, DEPARTMENT OF LAND AND NATURAL RESOURCES; LAURA THIELEN, Chairperson,<br><br>            Defendants.<br>_____ | ) Civ. No. 09-00036 SPK-BMK<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

INTRODUCTION

Plaintiffs Laki Kaahumanu and the Maui Wedding and Event Professionals Association challenge the constitutionality of administrative regulations of the State of Hawaii, Department of Land and Natural Resources ("DLNR") that require a permit for "commercial activity" on "unencumbered" state land.  They specifically challenge the requirement for a permit to hold certain "commercial" weddings on State public beaches.

1

The Court heard oral argument on cross-motions for summary judgment in December 2009.  After oral argument, the parties submitted supplemental briefing and evidence primarily addressing whether Plaintiffs have standing.  The Court, having now considered the record and all written and oral argument, DENIES Plaintiffs' Motion and GRANTS Defendants' Motion.  The regulations are constitutional as-applied to the factual situation now before the Court.  They are not overbroad in being applied to Plaintiffs' activity on public beaches.

SUMMARY

Plaintiffs have standing to make an as-applied challenge to the DLNR regulations because there is evidence that they have suffered sufficient "injury in fact" caused by the regulations.  They may therefore argue that the regulatory scheme is over broad and impermissibly burdens their activities (or the rights of third-parties such as engaged couples wanting to be married on a public beach).

On the merits, there is no indication that all unencumbered State beaches are traditional "public fora" for First Amendment purposes.  The commercial activity regulations pass a reasonableness test.  And, even assuming the regulations as applied to weddings otherwise trigger higher scrutiny, they are nevertheless constitutional.  The permit requirements meet the necessary time, place, and manner test.  The permit requirements (1) are content-neutral, (2) are narrowly-

2

tailored to serve significant government interests, and (3) leave open ample alternatives for First Amendment activity such as weddings on a public beach.

The breach-of-settlement-agreement claim (treating it as a supplemental state-law cause-of-action) fails.  The Court lacks jurisdiction over the claim.  And, in any event, there can be no breach of the prior agreement because the law has changed since 2001.  The settlement agreement allowed weddings at public beaches based upon "current law" (i.e., as it existed in 2001).  The challenged regulations took effect later; nothing in the settlement agreement prevented adoption of subsequent (facially-constitutional) regulations.

## BACKGROUND

Plaintiff Laki Kaahumanu is a pastor who performs religious wedding ceremonies on Maui.  Plaintiff Maui Wedding and Event Professionals Association ("MWAEP") is an association of wedding planners whose members, among other things, organize weddings for a fee.  Plaintiffs sometimes hold or organize those wedding ceremonies on State public beaches.  They do not dispute that some exchange of compensation for services is involved.  Plaintiffs brought this action challenging the constitutionality of DLNR administrative regulations, and the DLNR's implementing interpretations, that require a permit for "commercial activity" (including weddings performed or arranged for a fee) on public beaches.

The named Defendants are the DLNR, and its chairperson, Laura Thielen.[1]

In November 2002, the DLNR promulgated Hawaii Administrative Rule § 13-221-35 regarding "commercial activities" on state lands.  Section 13-221-35 provides:  "No person shall engage in commercial activities of any kind without a written permit from the board [of Land and Natural Resources] or its authorized representative."  It became effective on December 9, 2002.

In turn, Hawaii Administrative Rules § 13-221-2 defines several relevant terms.  "Commercial activity" is defined as follows:

> "Commercial Activity" means the use of or activity on state land for which compensation is received by any person for goods or services or both rendered to customers or participants in that use or activity.  Display of merchandise or demanding or requesting gifts, money, or services, except as allowed by chapter 13-7, shall be considered commercial activity.  Commercial activities include activities whose base of operations are outside the boundaries of the unencumbered state lands, or provide transportation to or from the unencumbered state lands.

"Compensation" is defined as follows:

> "Compensation" includes, but is not limited to, monetary fees, barter, or services in-kind.

---

[1] There might a question as to whether the State Department of Land and Natural Resources itself is a properly-named Defendant (as opposed to Thielen in her official capacity).  Nevertheless, the Court will presume that the naming of Defendants here is an administrative matter of no concern to the merits of the pending motions.  At minimum, Thielen in her capacity as Chairperson of the State DLNR is a proper defendant for the injunctive relief sought by Plaintiffs.

4

And the term "unencumbered public lands" is defined as:

> lands defined as public lands by section 171-2, HRS, and which have not been:
>
> (1)     Set aside for any purpose, by statute, executive order or otherwise, to a governmental agency, or
>
> (2)     Encumbered by lease, license, permit, easement or otherwise issued by the department.
>
> Unencumbered public lands include, but are not limited to, beach and coastal areas, submerged lands, and mountainous non-forest reserve, wildlife, or park areas.

Haw. Admin. R. § 13-221-2 (Dec. 9, 2002).[2]

The DLNR has utilized these regulations in recent years to regulate or control commercial activities such as kayak rentals and tours, surfing and surfboard schools, resort activities, other commercial ocean recreation businesses, and potential activities such as food businesses, hula classes, and other types of lessons. [Thielen Decl. of Aug. 8, 2009, at ¶¶ 4-10].

Prior to 2002, and before these "commercial activity" regulations were promulgated, the DLNR attempted in some form to regulate weddings on public beaches.  Plaintiff Kaahumanu and others filed a lawsuit in 2000 in the U.S. District Court for the District of Hawaii (*Kaahumanu et al. v. Dep't of Land and*

---

[2] When not formally citing a Rule, the Court will refer to the Hawaii Administrative Rules as "HAR."

*Natural Resources*, Civ. No. 00-00758DAE-KSC), which eventually settled.  The

settlement agreement from that suit dated June 22, 2001, provides, among other

terms, that:

> 1.     It is legal to have weddings on State of Hawaii public
> beaches.  No permit is required under current law, nor was any permit
> required under previous state law, for wedding [sic?] on any State of
> Hawaii beach area open to the general public, regardless of the size of
> the wedding or whether the wedding party uses portable chairs,
> folding tables, or similar items, providing that the wedding party does
> not fence off the beach or otherwise exclude the general public from
> the area.
>
> 2.     The State of Hawaii agrees that under current law
> weddings on State of Hawaii public beaches open to the general
> public are not required to pay any fees, obtain any permits, or be
> subject to any restrictions or requirements to which family picnics,
> family reunions, and/or religious or political gatherings are not
> subject, regardless of whether the wedding was planned and organized
> by the wedding couple, their friends and relatives, or a paid wedding
> planner/coordinator/consultant.

[Plaintiff's Exh. 1 (Aug. 10, 2009), at FF00006-7].  The settlement agreement itself

was not subject to Court approval.  The agreement does not provide that the Court

would retain jurisdiction to enforce its terms.  An injunction was not entered.  The

suit was dismissed by agreement of the parties.  These terms, however, become

relevant because, in addition to challenging the DLNR's 2002 regulations,

Plaintiffs contend that the DLNR has breached this 2001 settlement agreement.[3]

In August of 2008 – based at least in part on the 2002 regulations that were not in existence when the June 2001 settlement agreement was signed – the DLNR began requiring permits for all commercial beach weddings taking place on state beaches and unencumbered state lands.  Sometime before that, the DLNR had been holding meetings with commercial wedding industry representatives and tourism bureaus regarding the upcoming permit requirement for commercial beach weddings on state beaches and other unencumbered state land.  [*E.g.*, Plaintiff's Exh. 2].  The DLNR has established a permit system accessible most easily via a "Wiki Permits" website.   Applicants may also apply in person at a DLNR office.  The Wiki Permits website states:

> Wiki Permits is an online permitting service which allows authorized applicants to reserve and purchase right-of-entry (ROE) permits for commercial activity on unencumbered land, specifically, State public beaches.  Hawaii Administrative Rules (HAR) §13-221-35 requires persons conducting commercial activities on State unencumbered land to obtain a permit from the Department.

---

[3] Laki Kaahumanu was a party to that settlement agreement.  The MWAEP was not.  The Court will assume that, even if MWAEP was not a party, the Court can proceed with a ruling on the merits of a breach-of-settlement agreement claim based upon Kaahumanu's standing.  The Court therefore need not decide whether the MWAEP itself may seek to enforce a settlement agreement to which it was not a party.  Given the ultimate ruling in favor of Defendants, the question whether MWAEP may bring such a claim is essentially moot.

Commercial activity for which a permit is required would include a beach wedding, a baby christening, the scattering of ashes, or the teaching of a hula class, as possible examples.  Commercial activity, pursuant to HAR §13-221-2, "means the use of or activity on state land for which compensation is received by any person for goods or services or both rendered to customers or participants in that use or activity ..."  It is essential that all commercial activity for which a permit is obtained comply with the General Terms and Conditions for Commercial Activity.

[*See* Wiki Permits welcome page, *available at* https://dlnr.ehawaii.gov/permits/

welcome.html (last visited February 16, 2010)].  The following "general terms and

conditions for commercial activity" are set forth for issuance of a permit:

1.  The set-up, event, and restoration of the right-of-entry area or premises shall be limited to the date(s) and time(s) provided by the Applicant in the application, which in no event shall exceed two hours.

2.  The right-of-entry permit is subject to the payment of a non-refundable fee based on 10¢ per square foot per event per day, and further subject to a minimum fee of $20.00 per event.

3.  Applicant shall procure at Applicant's own expense, and maintain during the entire period of the right-of-entry permit, from an insurance company or companies licensed to do business in the State of Hawaii, a policy or policies of comprehensive public liability insurance in an amount of at least $300,000 per incident and $500,000 aggregate insuring the State of Hawaii against all claims for personal injury, death, and property damage; that said policy shall cover the entire right-of-entry area or premises, including all improvements and grounds and all roadways or sidewalks on or adjacent to the said right-of-entry area or premises in the control or use by Applicant. Applicant shall furnish the Department of Land and Natural Resources (the "Department") with a certificate(s) showing the policy(s) to be initially in force and naming the State of Hawaii as additional insured and keep said certificate(s) on deposit during the entire period. The procuring of this policy shall not release or relieve Applicant of its responsibility under this right-of-entry permit as set forth herein or limit the amount of its liability under this right-of-entry.

4.  Applicant shall indemnify, defend, and hold the State of Hawaii, Department

8

of Land and Natural Resources harmless from and against any claim or demand for loss, liability, or damage, including claims for bodily injury, wrongful death, or property damage, arising out of or resulting from: (a) any act or omission on the part of Applicant relating to Applicant's use, occupancy, maintenance, or enjoyment of the right-of-entry area or premises; (b) any failure on the part of Applicant to maintain the right-of-entry area or premises and areas adjacent thereto in Applicant's use and control, and including any accident, fire or nuisance growing out of or caused by any failure on the part of Applicant to maintain the area or premises in a safe condition; and (c) from and against all actions, suits, damages, and claims by whomsoever brought or made by reason of Applicant's non-observance or non-performance of any of the terms, covenants, and conditions of this right-of-entry or the rules, regulations, ordinances, and laws of the federal, state, municipal or county governments.

5.  At all times herein, Applicant shall keep the right-of-entry area or premises in a strictly clean, sanitary and orderly condition.

6.  Applicant shall be responsible for cleaning and restoring the right-of-entry area or premises to its original condition or a condition satisfactory to the Department upon completion of each day's event or activity. All trash shall be removed from the right-of-entry area or premises. If the Department finds that the Applicant has failed to clean and restore the right-of-entry area or premises to the Department's satisfaction, Applicant agrees to and shall reimburse the Department for all costs and expenses associated with cleaning and restoring the area or premises to its original condition.

7.  Applicant shall comply with all of the requirements of all federal, state, and municipal, [sic] authorities and observe all federal, state, and municipal laws applicable to the right-of-entry area or premises now in force or which may be in force.

8.  NO ALCOHOLIC BEVERAGES SHALL BE SERVED OR PERMITTED IN THE RIGHT-OF-ENTRY AREA OR PREMISES.

9.  Applicant shall not permit commercial solicitation including the sale of any item or advertising of commercial products to be conducted in conjunction with the permitted activity (no banners, handouts, flyers, posters, etc.).

10.  Applicant shall be responsible for providing any security deemed necessary or appropriate for the right-of-entry area or premises during the requested event or activity.

11.  Applicant shall supply to Land Division a name and local telephone number of a contact person who will be available at all times during the scheduled event.

9

12.  No person shall drive a motor vehicle on the right-of-entry area or premises.

13.  Applicant in the exercise of the right-of-entry permit shall use appropriate precautions and measures to minimize inconveniences to surrounding residents, landowners, and the public in general. Applicant shall not engage in any activity that may obstruct, impede, or interfere with the public use of the surrounding area or any public access to the area.

14.  No accessories, structures, devices, amplified instruments, appliances, apparatus or equipment of any type whatsoever shall be placed on or within the right-of-entry area or premises, including but not limited to the following:

- arches;
- bowers;
- alters;
- tables;
- chairs;
- kahilis;
- tents and or tarps;
- event signage of any type including banners [or] sandwich boards;
- kiosks or carts;
- stanchions, posts, ropes or similar equipment for the purpose of demarcation of the right-of-entry area; and
- surfboards, windsurf boards, kayaks or other ocean recreation equipment;

with the exception of the following:

- loose flowers, leis, bouquets, corsages or boutonnieres;
- unamplified musical instruments, including a conch shell;
- doves or butterflies for releases;
- a limited number of chairs as strictly necessary for the support of elderly, infirm, or disabled persons attending the event(s);
- cameras and camera equipment;
- other non-obtrusive hand-carried wedding accessories;
- small podium or cake stand, not to exceed three feet square in size; and
- ocean vessels/equipment used exclusively for the purpose of scattering ashes during authorized funeral services.

15.  In the event any historic properties or burial sites, as defined in section 6E-2, Hawaii Revised Statutes, are found on the right-of-entry area or premises, Applicant shall immediately stop all premises utilization or work or both and contact the State Historic Preservation Division in Kapolei at (808) 692-8015 in compliance with Chapter 6E, Hawaii Revised Statutes.

10

16.  Best management practices shall be employed to avoid having silt or dirt enter the ocean.

17.  All disputes or questions arising under this right-of-entry shall be referred to the Chairperson of the Board of Land and Natural Resources for a determination and resolution of the dispute or question. The Chairperson's decision shall be final and binding on the parties herein.

18.  The right-of-entry permit is revocable and terminable at anytime for any reason in the sole and absolute discretion of the Chairperson. As long as the revocation or termination is not as a result of any fault of, or default by Applicant of any provision of this right-of-entry permit, then Applicant may apply for a refund of any advanced rental payment made based upon the percentage of use denied by the revocation or termination.

19.  The right-of-entry permit is subject to Hawaii Administrative Rules, Title 13, Sub-title 10, Chapter 221, Unencumbered Public Lands, as amended. Rules are available for review at http://hawaii.gov/dlnr/land/administrative-rules. Applicant is required to familiarize himself with these rules. Applicant acknowledges that he has read, understands, and agrees to abide by these rules.

20.  The right-of-entry permit or any rights hereunder shall not be sold, assigned, conveyed, leased, let, mortgaged or otherwise transferred or disposed [of].

21.  The Department of Land and Natural Resources reserves the right to impose additional, terms and conditions as it deems necessary or appropriate while the right-of-entry is in force.

22.  All representatives of any commercial operator or service provider at the site must carry a copy of this permit with them and make it available for inspection at all times during the event(s). Failure of any operator or provider to carry this permit and make it available for inspection upon request by any DLNR official or enforcement officer shall constitute a violation under this permit.

23.  The applicant as the responsible party shall ensure that all terms and conditions of the permit are adhered to and met. In most cases, the applicant will be a wedding coordinator or professional. All other professionals that may be associated with the event, such as a videographer, photographer, a minister, etc., shall be required to and by possessing a copy of this document do hereby agree to also abide by the terms and conditions of this permit and shall carry a copy of this permit on their person at all times during the event.

24.  Violations of one or more permit conditions may result in administrative action, imposition of fine(s), and the rejection of future right-of-entry applications.

      25.  Applicant shall comply with other written conditions, which may be imposed by the Chairperson of the Board of Land and Natural Resources.

[Plaintiff's Exh. 3, *available at* https://dlnr.ehawaii.gov/permits/terms.html (last visited Feb. 16, 2010)].

Obtaining a permit via the website is relatively simple.  [*See* Declaration of Steven M. Molmen, dated Aug. 4, 2009, at pp. 2-5; Defendants' Exhs. 2-9, attached to Defendants' Separate and Concise Statement of Facts of Aug. 10, 2009].  The process leaves no discretion by any State individual as to granting it or denying it, providing the proper spaces are chosen when completing the forms on the internet.  The permit is issued automatically upon agreement to satisfy the terms and conditions.  (Plaintiffs, however, point to a provision allowing the Chairperson of the DLNR to revoke a permit at any time.)  The fee itself is not particularly onerous;  it would be $20 or slightly more if a very large area is proposed for use.  Plaintiffs perhaps question the motivation for the permit requirement, especially given past perceived animosity towards commercial weddings by government regulators.  *See, e.g.*, Affidavit of Ron Winckler of Aug. 10, 2009; *Kaahumanu v. County of Maui*, 315 F.3d 1215 (9th Cir. 2003) (describing litigation by Kaahumanu and others against Maui County officials regarding land use permit requirements for beach weddings on residential property).  Plaintiffs' primary contention, however, is that the permit requirement

itself is unconstitutional.  MWAEP members contends the permit process and threat of permitted weddings being cancelled has hurt their businesses, or that the insurance requirements are onerous.  [*E.g.*, Declaration of Eve Hogan, Dec. 22, 2009, at ¶ 3; Declaration of KatRama Brooks, Dec. 28, 2009, at ¶¶ 3-5 (referring to weddings on Kauai); Declaration of Ayesha Furumoto, Dec. 14, 2009, at ¶¶ 2-3; Winckler Affidavit, at ¶ 7].  (In an exercise of discretion, the Court allows and considers the post-hearing declarations and therefore denies Defendants' request to strike made in Defendants' Response Memorandum of December 14, 2009.)

It is also undisputed that, or there is no evidence to the contrary that, Plaintiffs have not been denied a permit, nor has anyone been prosecuted or fined for holding or organizing a beach wedding on a State beach without a permit. Plaintiffs have apparently been obtaining permits to hold beach weddings on State beaches, or arranging beach weddings adjacent to non-public facilities, i.e., "non-encumbered" beaches, or refraining from arranging beach weddings in lieu of weddings at other settings.  This does not necessarily mean Plaintiffs, or other non-parties such as wedding couples themselves, have not been "injured" by the challenged regulations.  For purposes of the factual record, however, there has been no permit denial, nor administrative-enforcement proceeding regarding a non-permitted beach wedding.

13

Plaintiffs' complaint alleges five counts.  Count One is for "Breach of Permanent Stipulation" regarding the June 2001 Settlement Agreement.  Count Two alleges a violation of Plaintiffs' First and Fourteenth Amendment rights, enforceable under 42 U.S.C. § 1983.  Count Three alleges a violation of Equal Protection, also enforceable under Section 1983.  Counts Four and Five seek injunctive and declaratory relief.  The Complaint seeks a declaration that rights have been violated and an injunction against imposing conditions or restrictions on Plaintiffs' wedding ceremonies on public DLNR land.  Additionally, there is a request for statutory attorneys fees and costs pursuant to 42 U.S.C. § 1988.

Cross-Motions for summary judgment are now before the Court.

## DISCUSSION

1.  ***Plaintiffs have standing***.

Defendants dispute whether Plaintiffs have standing to challenge the DLNR "commercial activity" regulations.  They argue that Plaintiffs may not make a facial challenge to a regulation that does not regulate inherently "expressive activity" such as making speeches, picketing, or hand billing.  They also argue that Plaintiffs lack standing to make a constitutional "as applied" challenge because Plaintiffs have never been denied a permit, nor prosecuted or cited for performing or organizing a beach wedding without a permit (whether for a fee or not).

### a. *A facial challenge to HAR §§ 13-221-2 and 13-221-35.*

To make a First Amendment facial challenge to an ordinance or regulation, the sections must "by their terms" seek "to regulate 'spoken words,' or patently 'expressive or communicative conduct' such as picketing or handbilling." *Roulette v. City of Seattle*, 97 F.3d 300, 303 (9th Cir. 1996) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612-13 (1973)).  If the challenged law does not regulate per se "expressive activity," then there must be standing to make an "as applied" challenge.  *E.g.*, *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1032 (9th Cir. 2006) ("a facial challenge . . . is not available.");  *S. Or. Barter Fair v. Jackson County*, 372 F.3d 1128, 1135 (9th Cir. 2004) ("a facial challenge is proper only if the statute by its terms seeks to regulate spoken words or patently expressive or communicative conduct, such as picketing or handbilling, or if the statute significantly restricts opportunities for expression.") (citations omitted).

The regulations here (HAR §§ 13-221-2 & 13-221-35) require a permit for "commercial activity" on "unencumbered state land."  "Commercial activity" is defined in pertinent part as "the use of or activity on state land for which compensation is received by any person for goods or services or both rendered to customers or participants in that use or activity."  Such regulations do not require

permits for anything inherently expressive.  Whether or not the definition might be

over broad, the regulatory scheme facially is directed towards regulating

commercial activity.  Under authority such as *Santa Monica Food Not Bombs*,

then, Plaintiffs' challenge must be "as applied."[4]

Such a rule makes sense.  The challenged regulatory scheme would appear

to be valid facially as to *other* "commercial activities" such as kayak rentals or

---

[4] This is not to say that an "as applied" challenge cannot also challenge parts (or the entire regulation) as unconstitutionally over broad or vague and in that sense facially unconstitutional.  It does mean, however, that the requisite "injury in fact" must be demonstrated before there is standing to challenge the constitutionality of the regulations on such grounds.  *See, e.g.*, *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 891 (9th Cir. 2007) ("Even when raising an overbreadth claim, however, we ask whether the plaintiff has suffered in injury in fact[.]"); *Long Beach Area Peace v. City of Long Beach*, 574 F.3d 1011, 1019 (9th Cir. 2009) ("Plaintiffs mounting a facial challenge to an ordinance may establish standing by alleging that they have [suffered a distinct and palpable injury].").

As analyzed to follow, Plaintiffs have sufficient evidence of their own "injury in fact" to demonstrate standing to make an "as applied" challenge.  They are therefore also in a position to make an overbreadth facial challenge on behalf of themselves and probably as to third parties (such as wedding couples) as well.  Given Plaintiffs' standing to make an "as applied" challenge, the Court need not delve further into the largely academic inquiry (in this situation) of third-party standing.  *See Santa Monica Food Not Bombs*, 450 F.3d at 1034 ("As we conclude that [plaintiff] has standing, there is no need to inquire further about the injury-in-fact standing of the other appellants.").  Likewise, the Court need not address whether a wedding itself has inherent religious elements such that the challenged permit requirements necessarily implicate protected First Amendment rights (religion rather than speech) or "have a close enough nexus to expression . . . to pose a real and substantial threat" of censorship so as to allow a facial challenge.  *So. Ore. Barter Fair*, 372 F.3d at 1135 (citation omitted).

food businesses.  Requiring a simple permit for such businesses would not likely impinge on the First Amendment.  *See, e.g.*, *Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 760-61 (1988) ("[L]aws of general application that are not aimed at conduct commonly associated with expression and do not permit licensing determinations to be made on the basis of ongoing expression or the words about to be spoken, carry with them little danger of censorship.").  Generally, "a holding of facial invalidity expresses the conclusion that the statute could never be applied in a valid manner."  *Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 797-98 (1984).  The challenged regulations here could be applied to commercial activity without implicating the Constitution.

Rather, Plaintiffs' claim here essentially is that a wedding necessarily is *not* a "commercial activity" and thus should *not* be subject to the commercial permit requirement *at all.*  Their argument is that the regulations should not apply to them, and such an application of the DLNR regulation is unconstitutional.  This is an "as applied" challenge.  *See, e.g.*, *Nordyke v. King*, 319 F.3d 1185, 1189 (9th Cir. 2003) ("[W]hether the action is protected expressive conduct . . . is best suited to an as applied challenge to the Ordinance.").[5]

_____

[5] A First Amendment challenge can be made not only against a statute, ordinance, or regulation, but also to the corresponding "implementing

(continued...)

b. ***Standing to make an as-applied challenge.***

"In an as-applied First Amendment challenge, the plaintiff must identify some personal harm resulting from application of the challenged statute or regulation." *Preminger v. Peake*, 552 F.3d 757, 763 (9th Cir. 2008).  Standing requires three elements:  "(1) injury in fact, (2) causation, and (3) likelihood that a favorable decision will redress the injury."  *Id.* at 762-63 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Again, no Plaintiff (or member of the MWAEP) has ever been denied a permit (or at least there is no evidence in the record of a denial).  Nor has any Plaintiff been cited for having a wedding on a beach without a permit.

---

[5](...continued)
administrative interpretation."  *Santa Monica Food Not Bombs*, 450 F.3d at 1033. The argument might thus be framed as a challenge not to HAR §§ 13-221-2 &-35 themselves, but as a facial attack directed specifically at (1) the DLNR's 25 "general terms and conditions for commercial activity" which an applicant must agree to comply with to obtain a permit [Plaintiff's Exh. 3, *available at* https://dlnr.ehawaii.gov/ permits/terms.html], or at (2) the administrative interpretation at the "Wiki Permits" website stating that "[c]ommercial activity for which a permit is required would include a beach wedding, a baby christening, the scattering of ashes, or the teaching of a hula class, as possible examples." [Defendants' Exh. 4, *available at* https://dlnr.ehawaii.gov/permits/welcome.html]. Again, however, such a largely academic inquiry is not necessary.  It is enough that Plaintiffs themselves have sufficient evidence of an "injury in fact" to challenge the regulatory scheme on an "as applied" basis.  In this situation, such regulatory administrative interpretations are equivalent to the *application* of the HARs to Plaintiffs' weddings or wedding-planning activities.

18

Nevertheless, Plaintiffs have evidence that couples are not having beach weddings because of the permit requirements, that planners have lost business because of the permit conditions, or Plaintiffs are otherwise adversely affected by the permit process.  [*See* Furumoto Decl. at ¶ 2 ("we have lost weddings because prospective clients were upset that they could no longer have arches or chairs on the beach");  ¶ 3 ("We lost clients when we tried to add permit fees to their wedding packages");  ¶ 4 ("we have been twice confronted with DLNR men in dark uniforms and guns to ask for permits, in beginning stages of weddings. . . these incidents marred the weddings and upset wedding clients a lot")] [*See also* Hogan Decl. at ¶ 3 ("I am having a very hard time getting insurance that is affordable. . . . I only do a few weddings a month so this is extremely costly"); ¶ 7 ("consequently, I now have to work with a coordinator every time I do a wedding in order to get the permit. More cost, more time.")  *and* Winckler Decl. at ¶ 7 ("In the 10-plus years that I have been a Wedding Consultant, I have coordinated 15 to 20 weddings per month, but that number has dropped to 5 to 10 per month over the past year, based on the combined effects of the downturn in the economy and the [permit requirements]")].

This evidence, assuming its truth, is sufficient to establish an "injury in fact" for purposes of a First Amendment challenge, and to establish that such injury is caused by the permit requirement.  *See, e.g.*, *Santa Monica Food Not Bombs*, 450

19

F.3d at 1034 (reasoning that averments that plaintiffs had modified behavior because of permit requirements sufficed to establish standing) (citing *Ariz. Right to Life PAC v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) ("[I]t is 'sufficient for standing purposes that the plaintiff intends to engage in 'a course of conduct arguably affected with a constitutional interest and that there is a credible threat that the challenged provision will be invoked against the plaintiff.'") (internal citations omitted)).  The injury is "actual, concrete, and particularized," *Preminger*, 552 F.3d at 754, even if it might otherwise be minimal.  *See Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 932 (9th Cir. 2008) ("an identifiable trifle is enough to fight out a question of principle; the trifle is the basis for standing and the principle provides the motivation") (quoting *United States v. Students Challenging Regulatory Agency (SCRAP)*, 412 U.S. 669, 689 n.14 (1973)).  And it is likely that a decision in favor of Plaintiffs would provide redress.  *Preminger*, 552 F.3d at 763 (reiterating the requirement of "likelihood that a favorable decision will redress the injury").

In short, Plaintiffs have standing.

2.  ***Merits of First Amendment challenge - Public or Non-Public forum?***

The extent to which the government may regulate Plaintiffs' First Amendment activities here (through the permit requirements of the HARs and their

20

implementing permit conditions) "depends upon the nature of the forum" – i.e., whether "public" or "non-public." *Preminger*, 552 F.3d at 765.

"Public fora are places such as streets and parks that traditionally have been devoted to expressive activity." *Id.* Restrictions in public fora are subject to a type of strict scrutiny. Content-based restrictions "are justified only if they serve a compelling state interest that is narrowly tailored to the desired end." *Id.*

On the other hand, "[n]on-public fora are areas that do not, by tradition or designation, serve as a forum for public communication." *Id.* In non-public fora, a content-based restriction is judged against lower standards: they "need only be 'reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view.'" *Id.* (quoting *Perry Educ. Ass'n v. Perry Local Educator's Ass'n*, 460 U.S. 37, 46 (1983)).

Even if one might envision a rally on a particular beach, not *all* State unencumbered public beaches are traditional public fora for purposes of a First Amendment analysis. True, state law certainly and "traditionally" provides that all beaches themselves – or at least the sandy areas – are public. *See, e.g.*, *Hawaii County v. Sotomura*, 517 P.2d 57, 63 (Haw. 1973) (explaining under the "public trust doctrine" that in Hawaii "[l]and below the high water mark, like flowing water, is a natural resource owned by the state 'subject to, but in some sense in

trust for, the enjoyment of certain public rights[.]'") (citation omitted).  But not all

public property is a "public forum" for purposes of the First Amendment.  Rather,

traditional public fora are areas such as streets or parks which have "immemorially

been held in trust for the use of the public and, time out of mind, have been used

for purposes of assembly, communicating thoughts between citizens, and

discussing public questions[.]"  *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*,

505 U.S. 672, 679 (1992) (quoting *Hague v. Committee for Industrial

Organization*, 307 U.S. 496, 515 (1939)).  Nothing in the record demonstrates or

indicates that all Hawaii unencumbered State beaches have traditionally been

places for the free exchange of ideas generally (or even more specifically, places

"time out of mind" for the exchange of wedding vows).  And no particular beach

has been specified by Plaintiffs.  Their attack is on the requirement as to any State

beach.

Thus, since State unencumbered beaches are non-public fora for purposes of

a First Amendment analysis, regulation need only satisfy a requirement of

reasonableness.  *Krishna Consciousness*, 505 U.S. at 683.  The regulations (HAR

§§ 13-221-2 and -35) and the implementing interpretations pass such a test.  They

regulate "commercial" activity involving the exchange of services for

compensation; the commercial weddings at issue here fit this definition.  The

permit requirements are directed at protection of a public resource and preservation of access for all.  The conditions address crowds (large or small), access (no structures, especially those that might block access to a beach), noise (no amplified music), and the "peace" (e.g., no weddings at late hours or for longer than two hours).  There is a reasonable and substantial interest for such permit requirements. *Cf. Edenfield v. Fane*, 507 U.S. 761, 767 (1993) ("laws restricting commercial speech, unlike laws burdening other forms of protected expression, need only be tailored in a reasonable manner to serve a substantial state interest in order to survive First Amendment scrutiny.") (citations omitted).

Further, the permit requirements are "content neutral."  The regulations focus on *any* commercial activity.  More specifically applied, the DLNR's interpretation focuses on *any* commercial wedding regardless of denomination or indeed whether it might be religious or not.  (The Court does not face a hypothetical situation of a "non commercial" wedding – such as an exchange of vows at a beachfront performed for no compensation at all by a judge or pastor who happened to be a friend of the bride.  The DLNR does not purport to require a permit for such an ad hoc ceremony – and in any event such a classification between non-commercial and commercial weddings would not present an equal-protection problem as it would be subject to a similar rational-basis analysis.)

23

Moreover, even assuming there were inherently religious aspects to a wedding such that the HARs and the DLNR's corresponding administrative interpretation would be subject to a stricter scrutiny analysis, they would still pass constitutional muster.  That is, assuming beaches were "public fora" for First Amendment purposes, the regulations nevertheless pass a stricter test for constitutionality.

In analyzing "public fora," courts look to whether there are proper time, place, manner restrictions.  Courts analyze three criteria:  regulations must (1) be content neutral; (2) be narrowly tailored to serve a significant government interest and (3) leave open ample alternative channels for the First Amendment activity.  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).  "Content-neutral time, place, and manner regulation of the use of a public forum" generally does not require procedural safeguards that have been required where censorship is likely.  *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 322 (2002).  "Regulations of the use of a public forum that ensure the safety and convenience of the people are not inconsistent with civil liberties but are one of the means of safeguarding the good order upon which civil liberties ultimately depend."  *Id.* at 780 (internal editorial marks and citation omitted).

The regulations at issue are content-neutral on their face.  They apply

equally to any "commercial activity."  They do not mention or distinguish between any specific message, nor mention speech or any group or religion at all.  No official can examine the content of the "speech" or wedding before a permit is issued (even if the Chairperson of the DLNR can revoke the permit).  The permits at issue here issue automatically.  The purpose is also content-neutral; it is directed at keeping public beaches open to the public, towards minimizing congestion, promoting maximum use, encouraging safety and cleanliness, and assuring accountability for possible damage.[6]

They are also narrowly tailored.  The regulations and conditions do not burden substantially more speech than necessary to serve their purpose.  *Ward*, 491 U.S. at 791.  Although some of the conditions (e.g., no structures such as chairs, tents or altars on the beach) might sometimes impose some burden on a particular proposed use, the conditions also serve to further the State's substantial interests for most proposed uses.  *See id.* at 798 ("a regulation of the time, place, or manner

---

[6] For this reason, the regulations also would not violate the First Amendment's free exercise clause (an argument not specifically made by Plaintiffs).  *See Jacobs v. Clark County Sch. Dist.*, 526 F.3d 419, 439 (9th Cir 2008).  The regulations have a secular purpose, do not have an effect that either disapproves (or advances) religion, and do not foster "excessive government entanglement" with religion.  *See, e.g., Catholic League v. City and County of San Francisco*, 567 F.3d 595, 599 (9th Cir. 2009) (applying the familiar *Lemon* test).

of protected speech must be narrowly tailored to serve the government's legitimate,
content-neutral interests but . . . it need not be the least restrictive or least intrusive
means of doing so.")  Although some commercial weddings (e.g., with only three
participants) might have little impact and thus there might seem to be no real need
for a permit, the size of a wedding is not the only criteria – a small wedding might
otherwise have loud music at midnight.  Rather, as the DLNR points out, "the
validity of the regulation depends on the relation it bears to the overall problem the
government seeks to correct, not on the extent to which it furthers the
government's interests in an individual case. . . . [T]he regulation's effectiveness
must be judged by considering all the varied groups that use the [forum]."  *Id.* at
801.

The "indemnity provisions" (conditions three and four of the "general terms
and conditions for commercial activity") are constitutional as well.  *See Santa
Monica Food Not Bombs*, 450 F.3d at 1057 (Kleinfeld, J., separate opinion
expressing the panel majority's view, upholding "hold harmless" permit
requirements) ("Indemnification, by means of a hold harmless agreement and
liability insurance, by users of others's property, is a common condition for the use
of both private and public property . . . . There is no authority for holding such
neutral, commonsense protections against municipal liability unconstitutional.").

There are also ample alternate opportunities for public beach weddings. Organizers may conduct a wedding elsewhere (not on a State beach), go to a private ocean side property, or seek out a non-State (e.g., *County)* beach, or they may obtain a permit for about $20. The conditions are not onerous. As the DLNR argues, although there is a fundamental right to marry, there is no fundamental right to marry on an unencumbered State beach.

3. ***Equal Protection and Due Process.***

Plaintiffs' claims for violations of equal protection and due process also fail to state claims. To the extent a fundamental right is at issue (e.g., free speech), such a claim has been analyzed. No other fundamental constitutional rights (e.g., illegal searches or seizures, or excessive force, in executing permit restrictions) are at issue. Plaintiffs have likewise not identified a "suspect class" being targeted by the regulations. The regulations therefore are constitutional if rationally related to a legitimate state interest. *See, e.g.*, *Heller v. Doe by Doe*, 509 U.S. 312, 319-20 (1993) ("a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.") (citations omitted). As analyzed previously, the regulations survive such rational-

27

basis scrutiny.

A due process claim likewise fails.  An deprivation of due process claim first requires identification of a protected federal right (e.g., a protected liberty or property interest).  *See, e.g.*, *Bd. of Regents v. Roth*,  408 U.S. 564, 577 (1972).  No such right is at issue here.  The HARs themselves do not create a protected property interest in a permit.  No permit has been taken away.  No arrest has been made.  The permit requirements do not deprive anyone of a right to marry, or a right to perform a wedding ceremony for a fee.  There can be thus be no deprivation without due process.

### 4. *Breach of Settlement Agreement.*

In addition to the constitutional challenges, Plaintiffs have asserted a claim for "breach of permanent stipulation."  Plaintiffs contend that Defendants are in breach of the June 22, 2001, settlement agreement in *Kaahumanu et al. v. Dep't of Land and Natural Resources*, Civ. No. 00-00758DAE-KSC.

As explained earlier, the prior suit was dismissed by stipulation.  Although the settlement agreement was lodged and filed in Civ. No. 00-00758DAE-KSC, nothing in the settlement agreement, nor in the Court's docket, indicates that the Court was to retain jurisdiction to enforce the agreement's terms.  No injunction was entered, either by stipulation with Court approval, or otherwise by the terms of

the settlement agreement.  The claim, then, is equivalent to a state-law breach of contract claim.  *See, e.g.*, *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) ("An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law"); *Sharafeldin v. Maryland, Dep't of Pub. Safety*, 94 F. Supp. 2d 680, 686 (D. Md. 2000) ("courts have held that where a state employee seeks redress for the alleged breach by the state of a settlement agreement which dismissed formerly pending Title VII claims against the state, the gravamen of such employee's grievance lies in contract.").

As a common-law breach of contract claim, there must be an independent basis of federal jurisdiction.  That is, jurisdiction cannot be based upon the prior federal suit where, as is the situation here, there was no provision retaining jurisdiction to enforce the settlement agreement's terms.  *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 378 (1994) ("Enforcement of the settlement agreement . . . whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed [federal] suit, and hence requires its own basis for jurisdiction.").

Plaintiffs argue that there is a basis for federal jurisdiction – 42 U.S.C. § 1983 – and that the state-law breach of contract action is a supplemental state-law cause of action over which there is ancillary jurisdiction.  The argument fails,

29

however, because such a state-law cause of action against the DLNR (and Thielen in her official-capacity) is a claim against the State of Hawaii which has Eleventh Amendment immunity even as to supplemental causes of action. *See, e.g.*, *Sharafeldin*, 94 F. Supp. 2d at 686 ("courts have concluded that actions for breach of a settlement agreement dismissing [federal] claims are actions which arise under state contract law and that no basis for federal jurisdiction exists for breach of such agreements because such actions are precluded by the Eleventh Amendment from being brought in federal court [against a state]"). The Eleventh Amendment bars not only federal claims that otherwise would be within the federal court's jurisdiction, but also pendent state-law claims. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120-21 (1984).

The same principles would bar a claim for prospective injunctive relief seeking to enforce the settlement agreement under *Ex parte Young*. The *Ex parte Young* exception to Eleventh Amendment immunity exists to vindicate ongoing violations of federal law (such as a violation of federal rights enforceable under Section 1983). It does not apply to state law violations. *See Actmedia, Inc. v. Stroh*, 830 F.2d 957, 964 (9th Cir. 1986) ("the exceptions to the eleventh amendment recognized in *Ex parte Young* . . . for suits brought against state officials are not applicable to suits based on alleged violations of state law") (citing

*Pennhurst*, 465 U.S. at 106).  The Supreme Court explained:

> [I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.  Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment. We conclude that [*Ex parte Young*, 209 U.S. 123 (1908)] and [*Edelman v. Jordan*, 415 U.S. 651 (1974)] are inapplicable in a suit against state officials on the basis of state law.

*Pennhurst*, 465 U.S. at 106.

In any event, even if Eleventh Amendment immunity was waived or the Court otherwise had jurisdiction to address the terms of the settlement agreement, Plaintiffs' claim would fail.  By its terms, the June 2001 agreement states that "[n]o permit is required *under current law*, nor was any permit required under previous state law, for wedding [sic?] on any State of Hawaii beach area open to the general public[.]" (Emphasis added.)  Given that condition, it states "[t]he State of Hawaii agrees that *under current law* weddings on State of Hawaii public beaches open to the general public are not required to pay any fees, [etc.]"  (Emphasis added.)

The subject regulations were not promulgated until 2002.  The interpretations and permit requirements were not promulgated until 2008.  They were not "under current law" for purposes of the agreement.  There is no allegation or indication that the settlement agreement was procured by fraud, or that there was an agreement never to change the law.  The terms do not exist in perpetuity.

Plaintiffs point to the phrase "except as allowed by chapter 13-7" in HAR

§ 13-221-2's definition of "commercial activity."  Plaintiffs assert that the phrase

exempts activity from being "commercial."  They argue that since HAR 13-7 has

not been changed since 2001, the law is still "current."  The argument would fail,

however, because the clause "except as allowed by chapter 13-7" does not set forth

a blanket exclusion from all "commercial activity."  As set forth earlier, the

definition is as follows:

> "Commercial Activity" means the use of or activity on state land for
> which compensation is received by any person for goods or services
> or both rendered to customers or participants in that use or activity.
> Display of merchandise or demanding or requesting gifts, money, or
> services, ***except as allowed by chapter 13-7***, shall be considered
> commercial activity.  Commercial activities include activities whose
> base of operations are outside the boundaries of the unencumbered
> state lands, or provide transportation to or from the unencumbered
> state lands

HAR § 13-221-2 (emphasis added).  Chapter 13-7, in turn provides an extensive

regulation "set[ting] forth rights and privileges of individuals or groups to engage

publicly in assemblies and meetings, or to sell or distribute literature in parks and

other sites designated . . . under the jurisdiction, management, and operation of the

[DLNR.]"  HAR § 13-7-1.  By its terms the exception "except as allowed by

chapter 13-7" modifies the "display of merchandise or demanding or requesting

gifts, money, or services."  It modifies solicitations.  It does not modify *all*

32

"commercial activity" much less prevent "current law" from changing as that term was used in the 2001 settlement agreement. So, even if this Court had jurisdiction over the breach of settlement claim, Plaintiffs would not prevail on that claim.

CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment and for Entry of Permanent Injunction [27] is DENIED. Defendants' corresponding Motion for Summary Judgment [25] is GRANTED. Judgment shall issue in favor of Defendants.

IT IS SO ORDERED.

DATED:  February 16, 2010.



Samuel P. King
Senior United States District Judge

*Kaahumanu, et al. v. State of Hawaii, Dep't of Land and Natural Resources, et al.*, Civ. No. 09-00036 SPK-BMK, Order Denying Plaintiffs' Motion for Summary Judgment and Granting Defendants' Motion for Summary Judgment

33